# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**04 11939 NMG**

SHEA-TRAYLOR-HEALY,
A JOINT VENTURE,

    Plaintiff,

v.

MASSACHUSETTS WATER RESOURCES
AUTHORITY,

    Defendant.

MAGISTRATE JUDGE JLA

RECEIPT # 58584
AMOUNT $ 150.00
SUMMONS ISSUED 1
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. M.P.
DATE 9/10/04

## COMPLAINT

Plaintiff Shea-Traylor-Healy, a Joint Venture ("STH"), by counsel, for its Complaint against Defendant Massachusetts Water Resources Authority ("MWRA") states:

### PARTIES, JURISDICTION AND VENUE

1.    Plaintiff STH is a Joint Venture consisting of J.F. Shea Co., Inc., a Nevada corporation with a principal place of business at 655 Brea Canyon Road, Walnut, California 91789; Traylor Brothers, Inc., an Indiana corporation with a principal place of business at 835 N. Congress Avenue, Evansville, Indiana 47715; and S.A. Healy Company, an Ohio corporation with a principal place of business at 1910 South Highland Avenue, Suite 300, Lombard, Illinois 60148.

2.    The Defendant MWRA is a body politic organized pursuant to Chapter 312 of the Acts and Resolves of 1984 with its principal place of business at 100 First Avenue, Charlestown Navy Yard, Boston, Massachusetts 02129. Pursuant to that statute, the MWRA is authorized, *inter*

#499128

1

*alia*, to enter into construction contracts. The MWRA is a "person engaged in trade or commerce" as those terms are defined in General Laws, Chapter 93A, Section 1.

3.    The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

4.    Venue is proper in this district under 28 U.S.C. § 1391 because jurisdiction is founded upon diversity of citizenship, and a substantial part of the events or omissions giving rise to this claim occurred in this district.

## BACKGROUND

5.    Plaintiff STH and Defendant MWRA entered into a fixed priced Contract (MWRA Contract No. 6055) (hereinafter the "Contract") for the construction of the Metrowest Water Supply Tunnel, Construction Package No. 2 (hereinafter referred to as the "Project").

6.    Stone & Webster, Inc. ("Stone & Webster") contracted with MWRA to serve as MWRA's Construction Manager for the Project. In its capacity as Construction Manager, Stone & Webster represented and acted on behalf of MWRA.

7.    As a condition to being awarded the Contract, MWRA required STH and all its subcontractors at any and all levels to agree to comply with the MetroWest Water Supply Project Labor Agreement ("PLA") (attached hereto as **Exhibit 1**), which was incorporated into the Contract as part of the Contract Documents.

8.    On behalf of MWRA, Stone & Webster is a party to the PLA, charged with fulfilling the role of Project Contractor who must monitor compliance with the PLA.

9.    MWRA intended the PLA to maintain labor harmony, labor-management cooperation and stability through utilization of the binding disputes resolution procedure set forth in the PLA.

10.    The PLA sets forth a three-step disputes resolution procedure to finally resolve questions arising out of the PLA. "Step 1" is to provide notice of the alleged violation of the PLA and to confer on the dispute. Should Step 1 fail to resolve the dispute, the dispute must be reduced to writing and a "Step 2" meeting must be requested. A Step 2 meeting must include representatives from the "involved Local Union", the "involved Contractor", and Stone & Webster as the Project Contractor. If the Step 2 meeting fails to resolve the dispute, a party may proceed to Step 3 and request binding arbitration.

11.    The Project extends over twelve miles from Southborough, Massachusetts to Weston, Massachusetts and has seven shafts that were constructed over the tunnel alignment at different locations, including Shafts L and N. Due to its central location along the alignment of the tunnel, STH used Shaft L as a primary access point to the tunnel during construction of the Project.

12.    The Contract required STH to provide personnel capable of performing all work required under the Contract. To meet this obligation, the Contract empowered STH to divide the work among subcontractors as STH believed appropriate, subject to compliance with the Contract and governing law.

13.    The PLA confirmed that STH retained its complete authority to manage its operation, including the authority to assign and schedule work.

14.    As part of its exclusive authority to subcontract, assign, and schedule its work, STH entered into a subcontract ("Subcontract") with KC Electric Company ("KC Electric") to perform electrical work on the Project on a time and materials basis, such that STH would bear the financial burden for any and all unanticipated labor hours for electrical work on the Project.

15.    The PLA incorporates Schedules A and B by reference with "full force and effect." Schedule B is the electricians' union agreement for the International Brotherhood of Electrical

#499128                                3

Workers Local 103 ("Local 103"). Schedule B requires STH to provide "a Journeyman Wireman top side at all times" on the Project.

16.    Consistent with the requirement to have "a Journeyman Wireman top side at all times," STH provided at least one topside electrician at Shaft L throughout the course of the Project.

17.    In 2001, approximately five years after constructing the first shaft and during construction of the final shafts (Shafts NE and NW at the Shaft N site), KC Electric notified STH that Local 103 demanded that an electrician be topside at Shaft N on the Project in addition to the topside electrician positioned at Shaft L.

18.    At no time prior to constructing Shaft N did Local 103, MWRA, or any other party to the PLA contend that STH had to provide a topside electrician at other shafts in addition to the topside electrician located at Shaft L. Indeed, Local 103's demand for an additional topside electrician at Shaft N contradicted its prior agreement that it was appropriate for STH to provide only one topside electrician, located at Shaft L, even during construction of other shafts.

19.    STH objected to Local 103's demand for a topside electrician at Shaft N on the basis that STH had the right to assign and schedule its work and STH had a topside electrician at Shaft L, which complied with the requirement to have "a Journeyman Wireman top side at all times" and was consistent with the prior course of performance in constructing the five previous shafts.

20.    On behalf of STH, KC Electric proceeded to Step 1 of the PLA's disputes resolution procedure by conferring with Local 103 in an attempt to resolve the dispute concerning whether STH was required to provide a topside electrician at each shaft as Local 103 insisted (hereinafter the "Electrician Manning" dispute).

21.    Following the Step 1 conferral, Local 103 maintained its position that the Shaft N site had to be manned with a topside electrician on each shift.

#499128                                    4

22.    Pursuant to the PLA, on or about September 25, 2001, STH submitted a written request for a Step 2 meeting between STH as the involved Contractor, Local 103 as the involved Local Union, and Stone & Webster as the Project Contractor. In that same month, STH began manning the Shaft N site with a topside electrician pursuant to its duty to proceed pending resolution of the Electrician Manning dispute.

23.    In a meeting held on or about November 9, 2001, MWRA, acting through Stone & Webster, denied the request to proceed to Step 2 despite STH's repeated objections.

24.    As a result of Local 103's insistence upon a topside electrician at Shaft N, and MWRA's refusal (through Stone & Webster) to grant STH a Step 2 meeting to resolve the dispute, STH was forced to man both Shaft L and Shaft N while work progressed, despite the lack of any such requirement in the Contract or at law and despite the parties' prior course of performance.

25.    By letter dated November 13, 2001, STH provided written notice of the change in the Contract work to MWRA through Stone & Webster pursuant to Article 13.4 of the General Conditions of the Contract. In this letter, STH indicated its intention to submit a Request for an Equitable Adjustment in the Contract Sum in anticipation of a change order for the additional, unanticipated costs incurred for providing an additional topside electrician at Shaft N on each shift.

26.    By letter dated April 29, 2002, Stone & Webster, on behalf of MWRA, issued its decision in which it indicated that a change order for the additional costs incurred for manning each shaft would not be forthcoming.

27.    On or about July 15, 2002, and pursuant to Article 19 of the General Conditions of the Contract, STH submitted its "Request For Equitable Adjustment Due To Change In Work Required Under The Contract" ("REA") in which it requested $356,080 in additional,

unanticipated costs STH incurred to provide an additional topside electrician at Shaft N for each shift.

28.     On or about February 21, 2003, MWRA's Engineer issued its decision, which concluded that no adjustment in Contract Price was warranted for the additional work STH performed.

29.     In a letter dated February 27, 2003, STH provided timely notice to MWRA, through Stone & Webster, of STH's objection to the decision of MWRA's Engineer.

**Count I**
**(Breach of Contract)**

30.     Paragraphs 1 through 29 of this Complaint are incorporated by reference in this Paragraph as if set forth in full herein.

31.     Pursuant to General Condition 13.4 of the Contract, STH is entitled to an increase in the Contract Sum because of damages sustained due to the "direction, interpretation, or any other act or omission of the Authority or the CM [Stone & Webster] . . ."

32.     Stone & Webster represented and acted on behalf of MWRA when Stone & Webster wrongfully denied STH a Step 2 meeting to resolve the Electrician Manning dispute, which is a breach of Stone & Webster's contractual duty to monitor compliance with the PLA and a denial of STH's due process rights provided for under the PLA's disputes resolution procedures.

33.     Through Stone & Webster's wrongful denial of a Step 2 meeting to resolve the Electrician Manning dispute, MWRA caused STH to man both Shaft L and Shaft N on each shift while work progressed, despite the lack of any such requirement in the Contract or at law and despite the parties' prior course of performance.

34.    As a result of MWRA's actions and omissions through Stone & Webster, STH incurred additional, unanticipated costs to provide an additional topside electrician at Shaft N for each shift.

35.    MWRA's failure to adjust the Contract Sum for the increased costs STH incurred to provide a topside electrician at Shaft N constitutes a breach of MWRA's contractual obligation to STH mandating an adjustment to the Contract Sum under such circumstances.

36.    MWRA's breaches of contract by its acts and omissions and those of its representative, Stone & Webster, have caused STH to incur and bear the burden to date of $356,080 in additional, unanticipated costs to provide an additional topside electrician at Shaft N on each shift.

WHEREFORE, Plaintiff STH demands judgment be entered against Defendant MWRA in the amount of $356,080, or as may be proven at trial, plus interest, costs, attorneys' fees and such other relief as this Court deems just and proper.

Respectfully submitted,

**SHEA-TRAYLOR-HEALY,**
**A JOINT VENTURE**

By its attorney,

Joel Lewin, Esq. (BBO #298040)
**Hinckley, Allen & Snyder LLP**
28 State Street, 29th Floor
Boston, Massachusetts 02109-1775
Tel: (617) 345-9000

Dated: September 10, 2004