UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEA-TRAYLOR-HEALY,<br>A JOINT VENTURE,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MASSACHUSETTS WATER RESOURCES<br>AUTHORITY,<br><br>　　　　Defendant. | Case No. 04-11969-NMG |

## AFFIDAVIT OF MICHAEL J. McBRIDE

1. My name is Michael J. McBride. I am a registered professional engineer in both Massachusetts and New York. I am the Deputy Chief Operating Officer in the Operations Division of the Massachusetts Water Resources Authority ("MWRA"). I have held that position for over two years and have been employed by MWRA in various capacities over the last 15 years. I have more than 24 total years experience in the construction and engineering industries and have extensive experience in the design and engineering of water and waste water facilities. I am familiar with the dispute which is the subject matter of the Plaintiff's Complaint and, except as to matters asserted upon information and belief, I have personal knowledge of the matters stated in this Affidavit.

2. The MetroWest Water Supply Tunnel project (the "Project") involved the construction of a deep rock tunnel 17.6 miles in length from Marlborough to Weston to enhance and improve the distribution system the MWRA uses to transport drinking water from the Wachusett Reservoir to MWRA's customers. It will provide redundancy to, and will work with, the older Hultman Aqueduct in transporting MWRA water to its member communities.

3. The twelve-mile middle portion of the shaft and tunnel construction Project was awarded to Shea-Traylor-Healy, A Joint Venture ("STH") under MWRA Contract 6055 (the "Contract"). In addition to and as part of the Contract, a Project Labor Agreement ("PLA") was applicable to the Project. Its primary purpose was to furnish a reliable source of labor for this time sensitive project and to provide for methods for prompt resolution of any and all jurisdictional and other potential labor disputes, thereby avoiding the risks and delays of labor strikes, work stoppages or slow-downs on the Project. Stone & Webster negotiated and administered the PLA. The MWRA was not a party to the PLA.. One of the roles I was assigned in connection with the Contract was as Engineer. The Engineer's role involved making binding decisions on behalf of MWRA on issues such as change orders and claims for extra work.

4. The plans and specifications for the Contract with STH required all the tunnel work to be accessed through Shaft L in Framingham, which was also to be constructed under the Contract. All mining, lining, grouting and finishing for the middle twelve miles of the tunnel was to be performed from Shaft L. All

workers, materials, equipment, construction support utilities and electricity were to be fed into the tunnel through Shaft L in Framingham.

5. Within the length of the twelve mile section of tunnel to be constructed under the Contract, the plans included the construction of five additional community connection shafts known as riser shafts. These shafts were to be excavated using the raise bore method of construction. These shafts were never intended or permitted to be used for access to the tunnel, due to their location in residential neighborhoods. Riser shafts on the Project had a finished diameter of only 30 inches.

6. In addition to the community riser shafts, the Contract included the construction of two other shafts, one 12 feet in diameter, designated as Shaft NW, and one 10 feet in diameter, designated as Shaft NE. Both were collectively referred to as Shaft N.

7. The construction of Shafts NE and NW were part of the original scope of work in the Contract. In accordance with Change Order 13 to the Contract, these Shafts were relocated and constructed adjacent to the MWRA's Norumbega Covered Storage Facility in Weston. These two shafts will feed water to, and take water from, the Storage Facility. The Contract permitted the construction of those shafts by either conventional "drill and shoot" method or by the raise bore method. The Contractor chose the raise bore method.

8. STH submitted and MWRA paid all costs associated with Change Order 13 under Change Order 16. At no time did MWRA, nor anyone acting on

MWRA's behalf, change any plan or specification by which STH was required to excavate and construct any additional shafts not originally within the scope of its work. The construction of Shaft N was not a change in the scope of STH's work under the Contract.

9. Change Order 13 allowed, but did not require, limited use of Shafts NW and NE as access for materials and equipment for work to be performed in the tunnel between the two shafts, a distance of approximately 248 feet. It also confirmed the prohibition against use of Shaft N as access in all other areas of the tunnel. See Page 10, Attachment No 2 to Change Order 13, attached hereto as Exhibit A.

10. During the course of the work under the STH Contract, and more particularly after it had completed the raise bore excavation of Shaft NW, STH, for its own convenience, began to use Shaft NW for access to the tunnel for lining, grouting and patching work. MWRA did not issue a Change Order to allow access to the tunnel work beyond the Shaft N site, but permitted it as a way to mitigate schedule slippage by allowing STH to work more efficiently and in more areas of the tunnel simultaneously.

11. Upon information and belief, STH's use of Shaft NW as a second tunnel access shaft for work under the Contract and some utilities, such as power for fans and lights prompted the dispute under the PLA in regard to the Union requirement that one topside electrician must be dedicated to each worker access shaft rather than a single electrician who could cover both Shaft L and Shaft

NW. These two shafts were located at a distance of some five miles apart from one another. Upon information and belief, STH's electrical subcontractor was required by the Electrical Workers Union of Greater Boston, Local 103 of the International Brotherhood of Electrical Workers ("Local 103"), to man the job topside with a second electrician (referred to as a "Journeyman Wireman") at all times that Shaft NW was in use as an access shaft. A true copy of section 6.25 of Local 103's work rules for "Shafts, Tunnels and Subways" is attached hereto as Exhibit "B". Upon information and belief, a representative of the Massachusetts Department of Public Safety, for reasons of worker safety, agreed with the Local 103 requirement of a dedicated wireman to be situated at both shaft sites due to the fact that the tunnel work below was being accessed through that shaft and certain utilities were being fed down the tunnel from that area. The same safety concerns were not applicable to the riser shafts as they were never used or usable for access and egress purposes, or for utility supply.

12. Attached hereto as Exhibits C, D and E are true copies of three principal items of correspondence that relate to the dispute resolution process employed under the PLA concerning the need to have a separate Journeyman Wireman at the top of each of the two working shafts. Respectively, they include a September 25, 2001 letter from STH to Stone & Webster, a November 13, 2001 letter from STH to Stone & Webster, and an April 29, 2002 letter from Stone & Webster to STH.

13. Attached hereto as Exhibit F is a true copy of my Engineer's Decision, dated February 21, 2003 whereby MWRA denied STH's claim under Article 13 of the General Conditions of the Contract for additional work resulting from the requirement of a second Journeyman Wireman. In that decision, I concluded that whether or not the parties to the PLA had properly followed the dispute resolution procedure under the PLA, no claim could be made against MWRA for extra work or for a change in the scope of the work as no change had occurred and as the dispute under the PLA involved only STH, KC Electric, STH's Subcontractor, Local 103 and Stone & Webster. The manning requirements under Local 103's work rules was a matter that KC Electric and STH are responsible for and had to be considered in the execution of the work

14. Attached hereto as Exhibits G and H are true copies of the Article 13 – Changes in the Work, and of Article 19 – Dispute Resolution, of the Contract between STH and MWRA.

Michael J. McBride

Commonwealth of Massachusetts
SS, Suffolk

On this 29th day of October, 2004, before me the undersigned Notary Public, personally appeared Michael J. McBride, proved to me through satisfactory evidence of identification, which was Massachusetts Drivers License and personally know to me, to be the person who signed on the preceding document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

Elizabeth A. Steele
Notary Public

My commission expires December 31, 2004

ELIZABETH A. STEELE
Notary Public
My Commission Expires Dec. 31, 2004

CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of the above document was served upon the attorney(s) of record for each party by First Class Mail.
By: _____
Date: October 29, 2004