UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SHEA-TRAYLOR-HEALY,
A JOINT VENTURE,

Plaintiff,

v.

MASSACHUSETTS WATER RESOURCES
AUTHORITY,

Defendant.

Case No. 04-11969-NMG

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS COMPLAINT

I. Introduction/Summary of Argument

The Defendant Massachusetts Water Resources Authority ("MWRA" or "Authority") respectfully submits this memorandum of law in support of its F. R. Civ. P. 12(b)(6) motion to dismiss the Plaintiff's Complaint for failure to state a claim upon which relief may be granted. MWRA assigns three bases for its motion.

First, the breach of contract claim asserted by Shea-Traylor-Healy, A Joint Venture ("STH") alleges that MWRA's denial of its claim for extra costs under a construction contract is due to a change in the scope of its work under a project

1

of tunnel and shaft construction (the "Project"). The costs include wage and fringe benefit expenses that STH became obligated to pay to its electrical subcontractor when Local 103 of the International Brotherhood of Electrical Workers ("Local 103") required a second Journeyman Wireman ("Wireman") to man the top of a shaft which was a part of STH's work. It is irrefutable that the additional Wireman did not result from any change in the scope of the contract work ordered by MWRA. The contract, both at the outset and at the end of STH's performance, called for the construction of a twelve mile segment of the MetroWest Water Supply Tunnel, and the construction of two large diameter shafts (Shaft L and Shaft Site N) and of five so-called riser shafts. The true reason for the extra costs incurred by STH, as detailed in the Affidavit of Michael J. McBride, derives exclusively from the unilateral decision of STH, for its convenience, to gain access for its work forces and materials, for some of its work, through Shaft Site N which contained two adjacent large diameter shafts, Shaft NE and Shaft NW. The original plans for the work contemplated access for workers, equipment and electrical power only through Shaft L. So long as that Shaft L was the only "working" shaft, only one topside Wireman was necessary. When STH unilaterally decided to use the second shaft for workers, supplies and electrical power, Local 103's work rule was implicated due to safety concerns for workers in Shaft N who otherwise would have to rely upon the Shaft L Wireman five miles away. MWRA respectfully submits that STH cannot, on any set of

2

facts, recover under the construction contract for increased costs under the Changes clause since no change in the scope of its work occurred.

Second, STH has waived any claim that it might have had to challenge the Applicability of the Local 103 work rule by its knowing failure to follow the mandate of an exclusive and mandatory dispute resolution procedure outlined in a Project Labor Agreement ("PLA"). (The PLA is fully reproduced as an attachment to STH's Complaint). Both STH and Local 103 were parties to the PLA. MWRA was not and was not intended to be. The failure of STH to demand binding arbitration, which was the third step of the three-step dispute resolution process, caused the dispute to be rendered, in the language of the PLA, "null and void". No cause of action against MWRA can result from STH's own failure to employ a mandatory dispute resolution procedure in an agreement that MWRA was never a party to. In fact, the PLA was not intended to provide a cause of action against MWRA under any circumstance. It was intended to assure a reliable source of labor, to provide labor harmony on the Project, to avoid strikes or work stoppages at the Project, and to provide a quick method of resolving jurisdictional, manning and other union/management disputes that might arise during the course of the work among the trades and contractors. (McBride Affidavit, ¶ 3). As MWRA was not a party to the PLA and undertook no obligations under the PLA, STH cannot state any claim for relief against MWRA under that agreement. MWRA does not ask that the arbitration remedy be enforced now. Rather, MWRA asks this court to enforce the arbitration

3

requirement only in the sense that it was STH's mandatory remedy and that STH should not now be relieved of the adverse consequences of having chosen not to arbitrate with Local 103 so that it may assert that "claim" against MWRA..

Third, while this Court has jurisdiction of the parties, venue is appropriate and the jurisdictional threshold has been met, MWRA relies upon a long line of cases within this Circuit and this District that respect and enforce forum selection clauses and remedy selection clauses in contracts that govern how and where disputes will be resolved. That line of cases make such clauses "prima facie valid" unless they result from fraud, or are overreaching, unfair or contravene a strong public policy. In the present case, the filing of the STH Complaint in federal court ignores the construction contract's provision that disputes would be resolved in the state courts of the Commonwealth. It also ignores the clear direction in the PLA that the appropriate and exclusive remedy for a dispute under the PLA was mandatory, binding arbitration, in this case between STH and Local 103. The federal court is therefore not the appropriate forum for STH's claim.

MWRA seeks dismissal of the Complaint on the merits of the claim as there is no set of facts upon which STH can recover against MWRA. <u>GE Capital Mortgage Services, Inc. v. Estate of Hilda Lugo</u>, 319 F. Supp. 2d 127, 129 -130 (D. Mass. 2004) (claim may be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief.) <u>The Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 16; nn. 15, 16 (1st Cir.

4

1989) ("Rule 12 (b)(6) is not entirely a toothless tiger." Its "minimal requirements are not tantamount to non-existent requirements. The threshold may be low, but it is real – and it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation.") Recovery in this case requires STH to show a change in the scope of its work under the construction contract, other than its own unilateral decision to use Shaft N. The application of Local 103's work rule did not result in a change in the scope of STH's work.

Even if this Court believes that a viable cause of action exists, MWRA respectfully asks this Court to refrain from exercising its diversity jurisdiction and defer to the forum selection clause agreed to by STH and MWRA.in the construction contract and to the requirement agreed to by STH for the use of binding arbitration in the PLA, assuming that that remedy has not already been forever waived.

## II. Argument

A.  There Was No Change Directed By MWRA In The Scope of STH's Work That Caused STH To Incur The Costs Of A Second Wireman

Paragraph 31 of the STH Complaint relies upon the language of section 13.4 of the construction contract as the provision allegedly breached by MWRA. The construction contract between MWRA and STH contains a standard

Changes Article under Article 13. Section 13.1.2 of that Article provides in pertinent part as follows:

> 13.1.2 The Authority, without invalidating the Contract, may order changes in the Work consisting of additions, deletions or other revisions, the Contract Sum and the Contract Time being adjusted accordingly, if necessary. All such changes in the Work shall be authorized by Change Order . . ..

In the present matter, MWRA did not order any change in the work that in any way caused STH, through its subcontractor, to incur the costs of the second Wireman. (McBride Affidavit, ¶¶ 4, 7 – 11). Nonetheless, STH claimed a change in the work and sought an equitable adjustment for amounts paid to its electrical subcontractor for the services of the second topside Wireman. The contract Engineer denied that claim in February, 2003. (McBride Affidavit, ¶ 13; Exhibit F). As a result of that denial, STH has asserted a claim for extra work arising out of an alleged change under section 13.4.1 of the construction contract. That provision, in pertinent part, provides as follows:

> 13.4.1 If the Contractor wishes to make a claim for an increase in the Contract Sum by reason of any work performed or materials furnished by him or by reason of any event, circumstance or occurrence, . . . he shall give the CM [Construction Manager] and the Authority written notice thereof within twenty days after the occurrence of the event giving rise to such claim, otherwise it shall be waived. . . . If the Contractor and the Authority cannot agree on the amount of the adjustment, if any, to the Contract Sum resulting from such a claim, it shall be determined by the CM subject to the provisions of Article 19.

The reference to Article 19 of the contract is to its provisions concerning "Dispute Resolution". Among the provisions of that Article that bear upon this motion are

6

those found in section 19.5.1 and 19.5.2, which in pertinent part provide as follows:

> 19.5.1 The Contractor, and any Subcontractor, Supplier or any other person or organization performing any part of the work, agree that each of them will waive jurisdiction and venue and shall submit to the jurisdiction of the courts of the Commonwealth of Massachusetts regardless of residence or domicile, with respect to any actions or suits at law or in equity arising under or related to the bidding, award or performance of the Work.
>
> 19.5.2 The Contractor, and any Subcontractor, Supplier or any other person or organization shall not commence any action, other than those in the Commonwealth of Massachusetts in the county where the Authority's Headquarters are located against the Authority . . . with regard to any matter whatsoever arising out of or relating to the validity, construction, interpretation or reinforcement [sic] of the Contract.

Under the Changes Article of the construction contract, it is incumbent upon the contractor STH to show that either that MWRA directed a change in the scope of its work or that some event or circumstance required the contractor to perform more work than originally specified, different work than originally specified, or the same work using different methods that were more costly than originally contemplated or that required more time to complete. Glynn v. City of Gloucester, 9 Mass. App. Ct. 454, 460-462 (1980).

In the present case, the difference between a true change in the scope of work which is compensable under Article 13, on the one hand, and a mere increase in costs not accompanied by a change in scope, on the other, is highlighted by the fact that the Shaft N site was the subject of two Change Orders issued by the Authority under the contract. Change Order 13 was issued

as a result of the necessity to relocate and redesign Shaft N, a true change in work scope. Ultimately, the increased costs of the contractor arising out of that change were paid to STH by way of Change Order 16. (McBride Affidavit, ¶ 8). However, the circumstances underlying those two change orders are dramatically different than STH's claim for the topside Wireman expenses. In the latter situation, STH must point to some action by MWRA or some event or circumstance that caused its scope of work under the contract to increase. It is not enough for STH to merely plead that its costs of performance increased. The costs of performance must increase as a direct result of an increase in the scope of its work. STH's Complaint has not and cannot point to any such action, event or circumstance, because the increased costs of manning Shaft N with a dedicated Wireman resulted solely and exclusively from STH's own decision, and for its own convenience, to use Shaft N as a working shaft for workers and equipment to expedite the completion of its work. In fact, Change Order 13, which allowed STH to use Shaft N for very limited purposes, was requested by STH and was permitted as a minor departure from the plans and specifications which required the exclusive use of Shaft L for access for workers, equipment and electricity. The reference in Change Order 13 to the use of Shaft N was **permissive,** not **mandatory.** All work was originally to have been completed with the use of Shaft L. (McBride Affidavit, ¶¶ 4, 9; Exhibit A). Based upon the statements in the McBride Affidavit and the exhibits, STH cannot sustain its burden of

showing that its alleged increased costs derived from an increase in the scope of its work or from any other circumstance other than its own choice.

    B.    The Project Labor Agreement Does Not Afford STH Any Cause Of Action Against The MWRA And <u>STH Has Waived Any Rights Or Claims Thereunder</u>

The Project Labor Agreement ("PLA") was intended, as is demonstrated by its own language in Article I cited below, to provide labor harmony on the Project and to provide streamlined methods for resolving disputes on the Project:

> In recognition of the special needs of this Project and to maintain a spirit of labor harmony, labor management cooperation, and stability during the term of this Project Labor Agreement, the parties agree to establish effective and **binding** methods for the settlement of all misunderstandings, disputes or grievances which may arise. (Emphasis supplied.)

Article VII of the PLA governed "Disputes and Grievances" that arose during the performance of the Project. STH in executing the PLA agreed that a certain subset of disputes that might arise during contract performance would be resolved exclusively under that agreement. Again, the intent was to expedite such disputes and to fully and finally resolve them without resort to the courts. To that end, the PLA set up a three-step dispute resolution procedure that was mandatory in nature. STH initially employed and followed the provisions of Article VII of the PLA relative to Local 103's work rule, but did not see the procedure through to its mandatory conclusion of binding arbitration. Even if it can be established that the firm of Stone & Webster, the administrator of the

9

PLA, made one or more missteps in the handling of STH's grievance (see Complaint ¶¶ 19-26; McBride Affidavit, Exhibits C, D and E), it was ultimately STH's failure to insist upon and to demand arbitration, including by way of a civil action to compel arbitration, that caused a waiver of its claim that Local 103 had misapplied its work rule. The provisions of the PLA (Article VII, Section 3, Step 3 (b)) are absolutely clear that "[f]ailure of the grieving party to adhere to the time limits established herein **shall render the grievance null and void.**" (Emphasis supplied). The time limits set for commencing the arbitration were equally clear and mandatory. Article VII, Section 3, Step 3(a) of the PLA provided that:

> If the grievance shall have been submitted but not adjusted under Step 2, either party may request, in writing within fourteen (14) calendar days after the initial Step 2 meeting, that the grievance be submitted to an arbitrator selected in the manner agreed upon . . ."

In this case, Stone & Webster did not "adjust" the grievance under step 2. For that reason, STH was obligated to move to step 3 – binding arbitration – whether or not Stone & Webster regarded STH as having standing to proceed to a step 2 hearing. (McBride Affidavit, ¶ 12; Exhibits C, D and E) It never sought arbitration and thereby failed to resolve the issue in the manner mandated by the PLA.

Plaintiff attempts to absolve itself of any responsibility for its non-compliance with the PLA by alleging that Stone & Webster was MWRA's agent and that the lack of resolution of its grievance under the PLA allows the claim to

10

survive and to be submitted as a claim under the construction contract. STH's claim must fail for two reasons. First, it is indisputable that the PLA makes grievances, such as the one that arose out of Local 103's ruling upon its work rule, subject to its own mandatory and exclusive grievance procedure. Article VII, Section 3, Step 3(a) of the PLA provides that "[t]he decision of the arbitrator **shall be final and binding** on all parties and the fee and expense of such arbitrations shall be borne equally by the involved Contractor and the involved Union(s)." Under the plain meaning of that provision, STH had an exclusive remedy that it was bound to use. There is no provision in the PLA which allows an unresolved grievance which has been rendered "null and void" to later spring back to life under either the PLA or the construction contract. The PLA provides for precisely the opposite result.

Second, the provisions of the PLA did not apply to or bind MWRA. Article II – Scope of the Agreement, Section 4 recites that "[t]his Agreement shall only be binding on the signatory parties hereto . . .". MWRA was never a signatory to the PLA (McBride Affidavit, ¶ 3). In addition, Article II, Section 7 of the PLA explicitly provided that "[n]one of the provisions of this Project Labor Agreement shall apply to the Massachusetts Water Resources Authority . . .". It is clear that STH had a mandatory and exclusive remedy which it did not follow. It is also clear that the PLA was intended to provide prompt finality to grievances that occurred during the course of the Project. The Local 103 work rule was one such dispute. The PLA should not be construed to allow an abandoned claim to

11

survive so as to be re-asserted outside the PLA process which was explicitly intended as the contractor's sole remedy. To do so would reward STH's own disregard and circumvention of the provisions of the PLA.

### C. This Court Should Dismiss The Complaint Or Transfer It Because The Parties Have Agreed To Resolve Disputes In State Court And/Or By Arbitration, Not In Federal Court

The rule consistently followed in this District and in the First Circuit originates from the U.S. Supreme Court decision in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9, 92 S. Ct. 1907, 1913, 32 L. Ed. 2d 513 (1972), which adopted the modern view that forum and remedy selection clauses are prima facie valid and will ordinarily be enforced "unless enforcement is shown to be unreasonable under the circumstances." Rooney v. Biomet, Inc., 2000 U.S. App. Lexis 6735, No. 99-2160 (1st Cir. April 13, 2000); Lambert v. Kysar, 983 F.2d 1110, 1116 (1st Cir. 1993); Doe v. Seacamp Association, Inc., 276 F. Supp. 2d 222 (D. Mass. 2003). Though decisions in this District have ruled that enforcement of forum selection clauses should be decided under federal law, Hailer v. Lemar Laboratories, 1983 U.S. Dist. Lexis 13433, (D. Mass. Sept. 26, 1983); Northeast Theatre Corporation v. Edie and Ely Landau, Inc., No. 82 3030-MC, slip op. at 4-5 (D. Mass. June 2, 1983); C. Pappas Company, Inc. v. E & J Gallo Winery, No. 82-3458-G, slip op. at 3 (D. Mass. June 29, 1983), Massachusetts state courts also now recognize and follow the same substantive rule. Jacobson v. Mailboxes, Etc.

U.S.A., Inc., 419 Mass. 572, 574 - 575 (1995). Compulsory arbitration clauses, while not uniformly treated as forum selection clauses, are also regularly enforced in this Circuit. Cashman Equipment Corp. v. Kimmins Contracting Corp., 2004 U.S. Dist. Lexis 44, No.03-10463-DPW, (D. Mass. January 5, 2004); Dempsey v. George S. May International Co., 933 F. Supp. 72 (D. Mass. 1996)

Under the authority of these decisions, this Court follows the rule that "[t]he standard in this Circuit for establishing that a forum selection clause is unreasonable requires that a resisting party must present evidence of fraud, undue influence, overweening bargaining power or such serious inconvenience in litigating in the selected forum that it is effectively deprived of its day in court." The Bremen, id. at 12 -19. Though it will be STH's burden to assert and prove that the clauses in the PLA and in the construction contract are unreasonable, there is no issue of fraud or undue influence connected to these two contracts with respect to the forum selection clause. The provision is a standard element of publicly awarded construction contracts. STH successfully bid on the Project and performed the work in Massachusetts. On the issue of convenience, STH appears to be willing to litigate in Massachusetts in this court and the burden of doing so in state court in Suffolk County is no more burdensome than in the federal court in Boston. With respect to the matter of "overweening bargaining power", it is reasonable to expect that an awarding authority like MWRA, in a public works construction contract setting, will always prefer to subject disputes to the state courts of the jurisdiction in which

the contract is awarded and the work is performed. That reality does not mean that this term of the construction contract is unreasonably "overreaching" so as to render it unenforceable.

At least one case in this Circuit deals with the forum selection clause in the context of construction contractors and construction disputes. In <u>R. W. Granger & Sons, Inc. v. Rojac Company, Inc.</u>, 885 F. Supp. 319, 322 (1st Cir. 1995), a general contractor incorporated in Massachusetts brought suit in this court against its subcontractor, a Connecticut business entity, in connection with two projects with the general contractor, one in New York and the other in Connecticut. The forum selection clause in that case required suit to be brought in the courts of Massachusetts. The subcontractor, Rojac, challenged Massachusetts as an inconvenient forum as it had commenced related litigation involving payment bonds on the two projects in New York and Connecticut and argued that those states were the more appropriate forums in which all litigation could be centralized. The <u>Rojac</u> court ruled in favor of the general contractor and required the action to go forward here in Massachusetts as explained below:

> The Court finds Rojac's arguments unpersuasive and concludes that the forum selection clause in the Granger-Rojac subcontract is reasonable and enforceable. As a general contractor which does business with various subcontractors in several jurisdictions, Granger rationally and legitimately designates Massachusetts as the forum for its claims in each of its subcontracts. Because the pending action involves Rojac's alleged breach of the subcontract and its failure to perform its duties thereunder, the subcontract forum selection clause should control. <u>Id.</u>

14

The same analysis applies in the present case. As evidenced by this case, MWRA does business with contractors with principal places of business outside of Massachusetts as well as with those situated in the Commonwealth. MWRA has an interest, as a public work awarding authority, whose contracts are subject to Massachusetts' public bidding and claims statutory provisions, in having disputes resolved in the state courts of Massachusetts where those issues are regularly presented and decided.

Even in situations where the forum selection clause may be somewhat ambiguous, the First Circuit has exercised its discretion in favor of upholding the clause. LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp., 739 F.2d 4, 7 – 8 (1st Cir. 1984). In that case the forum selection clause designated the courts of the Commonwealth of Massachusetts as the selected forum. Suit was brought in federal court in Massachusetts and defendant challenged the appropriateness of that forum claiming that the clause was intended to require that litigation proceed only in the Massachusetts state courts. Though the clause was characterized as "somewhat ambiguous" by the court, i.e., as to whether the parties meant to select any state or federal court within the Commonwealth, or just Massachusetts state courts, the court ruled in favor of enforcement of the clause as referring to the Massachusetts state courts). While the forum selection clause in the present case presents similar language, LFC Lessors appears to hold that the ambiguity can be resolved in favor of the state courts where a similar choice of law clause also designates Massachusetts law as controlling.

15

Massachusetts law governs this construction contract. Section 24 of MWRA's enabling act (c. 372 of the Acts of 1984; M.G.L. c. 92 App. § 1-24) prefers the use of the state superior court system to resolve MWRA litigated matters.

In this case, the parties explicitly, carefully and reasonably agreed to the manner and tribunal before which disputes would be presented. They further carefully allocated a certain group of disputes and grievances (primarily union-management disputes involving jurisdiction, manning, wage rates, hours, etc.) as appropriate to be resolved on a fast track method spelled out in the PLA culminating in binding arbitration. Other disputes such as claims for extra work under the construction contract were to be decided in the state courts of Massachusetts in the county (Suffolk) where MWRA has its headquarters if they could not be resolved by agreed change order. There is nothing unreasonable about these designations. They should be respected and upheld by this Court.

### III. Conclusion/Relief Requested

Based upon the foregoing, MWRA urges this Court to dismiss the Complaint on its merits for failure to state a claim upon which relief may be granted, without regard to the forum selection clause issues. The PLA gives STH no cause of action against MWRA and STH has waived its claim to participate in binding arbitration with Local 103. That waiver should not be overturned and disregarded by permitting the claim to proceed to either a state or federal court

16

forum. STH states no claim against MWRA under the construction contract as its increased costs were solely caused by its own decision to use Shaft N and not by a change in the scope of its work.

In the alternative, if this court determines that STH states a claim under the construction contract, MWRA respectfully requests this Court to enforce the forum selection clause in section 19.5 of the contract's General Conditions by dismissing the case with leave to STH to re-file in the appropriate state court. MWRA does not seek enforcement of the arbitration as that remedy has been waived and should not be reinstated.

Dated: October 29, 2004

Respectfully Submitted,
Massachusetts Water Resources Authority

By Its Attorneys,

Steven A. Remsberg (BBO #416620)
John Navoy (BBO #367780)
Mass. Water Resources Authority
Charlestown Navy Yard
100 First Avenue, Building 39
Boston, MA 02129
(617) 788-1145

### CERTIFICATE OF SERVICE

I, Steven A. Remsberg, hereby certify that on this 29th day of October, 2004, I served a copy of the foregoing Defendant's Memorandum in Support of Motion to Dismiss Complaint, by mailing same, postage prepaid, to all counsel of record.

Steven A. Remsberg