UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHEA-TRAYLOR-HEALY,<br>A JOINT VENTURE,<br><br>    Plaintiff,<br><br>v.<br><br>MASSACHUSETTS WATER RESOURCES AUTHORITY,<br><br>    Defendant. | Case No. 04-11969-NMG |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

Plaintiff Shea-Traylor-Healy, a Joint Venture ("STH"), by counsel, respectfully submits this Memorandum in Opposition to the motion submitted by Defendant Massachusetts Water Resources Authority ("MWRA") to dismiss the Complaint in this action ("Motion"). As argued herein, MWRA's Motion must be denied because STH has properly filed this lawsuit in this Court, which states a claim for which relief may be granted based upon MWRA's breach of contract by its acts and omissions through its agent in denying STH's rights under the Contract's Project Labor Agreement ("PLA").

### BACKGROUND

STH and MWRA entered into an agreement (the "Contract") under which STH was to construct a portion of the Metrowest Water Supply Tunnel. STH was responsible for assuming the overall responsibility for the labor, including STH's duties to provide personnel to perform the construction work, to divide the work among subcontractors and to determine the extent of work to be performed, subject to the Contract requirements and the law. Complaint ¶¶ 5, 12.

this difficult burden to show that STH's claim is insufficient as a matter of law. Nat'l Credit Union Admin. Bd. v. Regine, 795 F. Supp. 59, 62 (D.R.I. 1992).

MWRA has not met, and cannot meet, this extraordinary burden. Viewing the Complaint in the light most favorable to STH as the plaintiff, and resolving every doubt in its favor, it is abundantly clear that STH has sufficiently pled a claim for relief. The MWRA fails to demonstrate that this court lacks jurisdiction or is an inappropriate venue or that STH has not pled a claim for breach of contract that entitles it to relief based upon MWRA's actions and omissions that constructively changed the Contract to require a second topside electrician by denying STH its right to resolve the labor dispute pursuant to the PLA's dispute resolution process.

A. **MWRA's Motion Must Be Denied Because It Inappropriately Relies on Erroneous Facts and Assumptions Outside the Complaint.**

As STH's claim must be reviewed based upon only those facts set forth in the Complaint, all materials outside the pleadings are excluded when reviewing the Complaint for whether it fails to state a claim upon which relief can be granted. See Litton Indus. v. Colon, 587 F.2d 70, 74 (1st Cir.1978). Rule 12(b)(6) of the Federal Rules of Civil Procedure, however, provides that if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

It is wholly within the Court's discretion whether to review materials outside of the pleadings and convert a motion to dismiss into a summary judgment motion. See Whiting v. Maiolini, 921 F.2d 5, 6 (1st Cir.1990). This Court is not required to accept MWRA's legal

3

conclusions, subjective characterizations or conclusory statements that have been cast in the form of factual allegations in a supporting affidavit. Judge v. Lowell, 160 F.3d 67, 77 (1st Cir. 1998). Accordingly, the Court may reserve summary judgment until the parties have had a chance to assemble a complete factual record after mutual discovery. See Boston's Children First v. City of Boston, 98 F. Supp. 2d 111, 115 (D. Mass. 2000) (refusing to consider the information outside the pleadings on a motion to dismiss under Rule 12(b)(6)).

The MWRA's Memoranda of Law and the Affidavit of Mr. Michael J. McBride ("McBride Aff.") mischaracterize the facts in STH's Complaint, draw inappropriate inferences and make numerous erroneous assumptions of fact outside of and unsupported by the facts presented in the Complaint and, therefore, must be disregarded by this Court in deciding upon the Motion. At this time, this Court should consider only the allegations and reasonable inferences that may be drawn from the Complaint, and deny MWRA's Motion to Dismiss. Once discovery is conducted, MWRA will once again have an opportunity to assert a motion for summary judgment, but on a complete record.

While it is STH's position that based upon the appropriate application of the legal standard, its Complaint has genuinely stated a viable claim against MWRA, in the event this Court treats MWRA's Motion as one for summary judgment, STH avers that there are genuine issues of material fact that must be investigated and resolved through discovery. Rule 56(f) stands for the proposition that there should be "a safety valve for claimants genuinely in need of further time to marshal facts, essential to justify their opposition to a summary judgment motion." Reid v. State of New Hampshire, 56 F.3d 332, 341 (1st Cir. 1995). A strong presumption in favor of discovery exists where, as here, STH can demonstrate a plausible need

4

for the discovery and expects that the facts are discoverable within a reasonable amount of time. Resolution Trust Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir.1994).

**B.   STH's Complaint States a Valid Cause of Action for MWRA's Breach of Contract.**

The PLA is incorporated in the Contract between STH and MWRA as part of the Contract Documents. Complaint ¶ 7. The MWRA breached the Contract by failing to compensate STH for the additional costs resulting from the additional electrician demanded by the labor union and further by its acts and omissions in denying STH its rights under the PLA to have the electrician manning dispute resolved expeditiously.

Second, when MWRA's Construction Manager ("CM") refused to hold what is known as a Step 2 meeting under the PLA, it breached its duty to "monitor compliance" with the PLA's terms and conditions and, in fact, forced noncompliance with the PLA by its own refusal to attend a Step 2 meeting, which is also required by the PLA. Id. Ex. 1 (PLA pp. 1-2, 17-18). In this regard, the PLA provides a three-step dispute resolution process as follows:

> Step 1: "Should the Local Union(s) or Project Contractor [i.e., the CM] or any other Contractor have a dispute with the other party and, if after conferring, a settlement is not reached within three (3) working days, the dispute shall be reduced to writing and proceed to Step 2 . . . .";
>
> Step 2: "The Business Manager or his designee of the involved Local Union, together with the International Union representative of that Union, the site representative of the involved Contractor, and *the labor relations representative of the Project Contractor [CM] shall meet within seven (7) working days of the referral of the dispute to this second step* to arrive at a satisfactory settlement thereof";
>
> Step 3: If the parties fail to reach an agreement in the Step 2 meeting, "the dispute may be appealed" and "either party may request . . . that the grievance be submitted to an arbitrator ... ."

Id. ¶ 10 & Ex. 1 (PLA art. VII, § 3, pp. 17-18) (emphasis added).

5

After failing to resolve whether STH had to man each shaft with a topside electrician in a Step 1 meeting between STH's electrician and the Local 103, id. ¶¶ 20-21, on September 25, 2001, STH submitted a written request to MWRA's CM for a Step 2 meeting pursuant to the PLA, id. ¶ 22. On November 9, 2001, representatives from STH, its electrician, MWRA's CM, the Local 103, and the Department of Public Safety met in what STH believed would be the requested Step 2 meeting. Id. ¶ 23. Instead, MWRA's CM refused to hold a Step 2 meeting based upon its flawed position that STH had no rights under the PLA to request a Step 2 meeting. Id. As the only contractor financially affected by the addition of a second topside electrician, STH strongly objected to being denied its right to a Step 2 meeting in accordance with the PLA. Id. ¶¶ 14, 25. Thus, by the MWRA's actions and omissions, STH was denied its contractual right to resolve the electrician manning dispute through the PLA's dispute resolution process.

MWRA is held responsible for the CM's denial of STH's rights under the PLA because the CM acted as MWRA's agent on the Project. Id. ¶ 6. The General Conditions of the Contract entitle STH to make and pursue a claim for damages by reason of any direction, interpretation, or any other act or omission of the MWRA or its CM. Accordingly, after being denied its right to resolve the electrician manning dispute pursuant to the PLA's dispute resolution process, STH notified the CM on November 13, 2001 that the CM's denial of STH's right to a Step 2 meeting constituted a change to the Contract Work and that STH intended to submit a request for equitable adjustment in the Contract Price for its costs associated with maintaining an additional electrician on the surface of the Shaft N work site. Id. ¶ 25.

6

MWRA and its CM further compounded the breach of contract by delaying a response to STH's claim. After submitting the matter to the CM on November 13, 2001, it was not until April 29, 2002 when the CM finally responded on behalf of the MWRA by indicating that a change order for the additional costs incurred for manning each shaft would not be forthcoming. Id. ¶¶ 25-26. After receipt of the CM's written determination, the Contract required STH to submit the matter for decision by MWRA's Engineer. MWRA's Engineer did not issue its Decision until over seven (7) months after STH's submittal of its claim—nearly seventeen (17) months after STH initially requested the Step 2 meeting. Id. ¶¶ 27-28. This exorbitant delay in resolving the dispute is significant because it forced STH to provide an additional topside electrician for the entire period based upon the Contract's duty to proceed.[1]

The Engineer's Decision erroneously denied compensation to STH for the additional labor costs STH incurred to employ a second topside electrician that was not required by Contract. MWRA, therefore, breached the contract by failing to allow STH a Step 2 meeting to resolve the electrician manning dispute and subsequently refusing to compensate STH for the resulting costs to employ a second topside electrician. Id. ¶¶ 32-36. Thus, STH has stated a valid claim in its Complaint, for which relief may be granted by awarding STH a judgment equal to the amount of damages STH sustained due to MWRA's breach of contract.[2]

---

[1] The Contract generally permits the Engineer only ninety (90) days to issue its decision for claims exceeding $50,000, although the Engineer may inform the Contractor before the expiration of ninety (90) days that more time will be required.

[2] Although MWRA argues it did not order any change in the work to require STH to incur additional costs for a second topside electrician, MWRA in fact constructively ordered this additional work by its denial, through the CM, of STH's right to a Step 2 meeting to resolve the electrician manning dispute. This denial, coupled with STH's duty to proceed and the lengthy delay in receiving decisions from MWRA and its CM, constructively changed the Contract to require an additional topside electrician and is, therefore, compensable under the terms of the Contract and Massachusetts law. See Findlen v. Winchendon Hous. Auth., 28 Mass. App. Ct. 977, 978 (1990); see also M.L. Shalloo, Inc. v. Ricciardi & Sons, Inc., 348 Mass. 682, 684 (1965).

7

C. **STH Did Not Waive Its Claim.**

By the plain terms of the PLA, MWRA's denial of STH's right to a Step 2 meeting necessarily prohibited STH from proceeding to Step 3, which would have permitted STH to demand arbitration. The agreement to arbitrate set forth in the PLA "is a matter of contract construction ..." and, therefore, subject to Massachusetts contract law. Newspaper Guild of Salem v. Ottaway Newspapers, Inc., 79 F.3d 1273, 1279 (1st Cir. 1996). Massachusetts law provides that if "the words of a contract are clear, they alone determine the meaning of the contract...," Merrimack Valley Nat'l Bank v. Baird, 372 Mass. 721, 723 (1977), and that an unambiguous contract must be enforced according to its terms, which are construed in accordance with their ordinary and usual sense, see Northborough Youth Hockey Program, Inc. v. Knox, 2000 WL 1473504, at *9 (Mass. Super. 2000) (citing Schwanbeck v. Fed. Mogul Corp., 412 Mass. 703 (1992); Edwin R. Sage Co. v. Foley, 12 Mass. App. Ct. 20 (1981)).

Here, Step 3 of the PLA's dispute resolution process provides STH a right to demand arbitration only if "the grievance shall have been submitted but not adjusted under Step 2," in which case "the dispute may be appealed" and "either party may request . . . that the grievance be submitted to an arbitrator." Complaint ¶ 10 & Ex. 1 (PLA art. VII, § 3, p. 18). Thus, by MWRA's denial (through the CM) of STH's right to a Step 2 meeting, STH was also denied its right to demand arbitration because MWRA prevented STH from establishing the conditions precedent necessary to demand arbitration. Cf. Platt Pac., Inc. v. Andelson, 862 P.2d 158, 162 (Cal. 1993) ("When, as here, the parties have agreed that a demand for arbitration must be made within a certain time, that demand is a condition precedent that must be performed before the contractual duty to submit the dispute to arbitration arises."); Queens Blvd. Med. Group v. Vistreich, 201 N.Y.S.2d 1016, 1022 (N.Y. Sup. Ct. 1960) (staying an arbitration as being

8

premature due to the failure of a condition precedent to be met). Without any right to demand arbitration under the PLA, STH properly pursued the only remedy afforded it through the Contract's claims and disputes procedures in order to recover the costs STH incurred due to MWRA's direction, interpretation and its acts and omissions that caused STH to employ a second topside electrician that was not required by Contract.

Furthermore, MWRA must be estopped from contending that STH has waived its claim by not demanding arbitration. Equitable estoppel serves "to accomplish the prevention of results contrary to good conscience and fair dealing … ." McLearn v. Hill, 276 Mass. 519, 524, 177 N.E. 617 (1931). Equitable estoppel is an issue "of fact for a trial court," and requires proof of the following elements:

> "(1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; (2) and act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; (3) and detriment to such person as consequence of the act or omission."

Edwards v. Sullivan & Cogliano Cos., 2002 Mass. App. Div. 43, 2002 WL 441968, at *3 (2002) (quoting Boylston Dev. Group v. 22 Boylston St. Corp., 412 Mass. 531, 542, 591 N.E.2d 157 (1992)).

As an issue of fact, the issue of equitable estoppel must be reserved for the finder of fact at trial and, therefore, presents an additional basis to deny MWRA's Motion. See Turnpike Motors, Inc. v. Newbury Group, Inc., 403 Mass. 291, 295-96, 528 N.E.2d 1176, 1178-79 (1988). In the analogous context of a statute of limitations defense, courts have invoked equitable estoppel to prevent such a defense prior to trial based upon the defendant's representations, acts, or omissions that led the plaintiff to refrain from pursuing litigation within the statute of

9

limitations. See, e.g., La Bonte v. New York, New Haven & Hartford R.R. Co., 341 Mass. 127, 131-32, 167 N.E.2d 629, 632-33 (1960) (finding the defendant's representations to the plaintiff that it would take "a little while" to investigate the claims, but that the plaintiff would return in June after the statute of limitations would have run, to be "sufficient to present an issue of fact for the jury" with respect to the estoppel defense); Knight v. Lawrence, 331 Mass. 293, 296-97, 118 N.E.2d 747, 749 (1954) (permitting the estoppel issue to go to trial based upon the defendant's representation that the plaintiff did not need to do anything because the parties would settle the claim). Importantly, at trial, STH need not establish that MWRA acted with deceit, bad faith, or actual fraud for equitable estoppel to be invoked, so long as STH establishes facts that "constitute conduct contrary to general principles of fair dealing and to the good conscience which ought to actuate individuals and which it is the design of the courts to enforce." MacKeen v. Kasinskas, 333 Mass. 695, 698, 132 N.E.2d 732 (1956).

As alleged in the Complaint, and would be developed more fully in discovery and at trial, the acts and omissions of MWRA and its representatives prevented STH from proceeding to Step 3 of the PLA's dispute resolution process and, in fact, lead STH to believe that the matter would be resolved pursuant to the Contract's claims procedures instead of the PLA's dispute resolution process. Complaint ¶¶ 22-27. Indeed, just four days after being denied a Step 2 meeting, STH notified MWRA's CM that MWRA had changed the Contract by denying STH its rights under the PLA, thereby forcing STH to incur additional costs to employ a second topside electrician. Id. ¶ 25. Without receiving any objection to STH's stated expectation that its additional costs to employ the second topside electrician would be addressed in a change order, STH submitted its

10

claim for the same on or about July 15, 2002. Id. ¶ 27.[3] Thus, STH had no reason to believe that it should have demanded arbitration at the time it was denied a Step 2 meeting, or that MWRA ever considered the matter resolved by the lack of a demand for arbitration. Indeed, it was not until the Engineer's Decision on February 21, 2003—over fifteen (15) months after STH notified MWRA's CM of the change to the Contract and after STH had completed the affected work—that a representative of MWRA first mentioned that STH could have, and should have, demanded arbitration. Complaint ¶ 28. Thus, MWRA's argument that STH should have demanded arbitration must be estopped as being "contrary to general principles of fair dealing" based upon the actions and omissions of MWRA's representatives over the course of a fifteen (15) month period that MWRA would work to resolve the electrician manning dispute through the Contract's claims procedures.

### D.  This Court Is the Appropriate Venue.

STH has filed this action in the appropriate forum pursuant to the parties' forum selection clause. In this regard, Paragraph 19.5 of the Contract's General Conditions, entitled "Venue," provides in relevant part as follows:

> 19.5.1 The Contractor, and any Subcontractor, Supplier and any other person or organization performing any part of Work, agree that each of them will waive jurisdiction and venue and ***shall submit to the jurisdiction of the courts of the Commonwealth of Massachusetts*** regardless of residence or domicile, with respect to any actions or suits at law or in equity arising under or related to the bidding, award or performance of the Work.
>
> 19.5.2 The Contractor . . . shall not commence any action, other than those ***in the Commonwealth of Massachusetts in the county where the Authority's***

---

[3] The need for additional discovery on this issue is exemplified by MWRA's inappropriate attempt to inject disputed factual matters through Mr. McBride's affidavit. Tellingly, even Mr. McBride's affidavit confirms the reasonableness of STH's belief it would be compensated through the change order procedures based upon the statement made by MWRA's CM in its April 29, 2002 letter (McBride Aff. Ex. E) that, after considering the matter for more than five (5) months, the CM had in those five months "*made every effort to resolve this issue* by bringing all concerned parties to the table to be heard *and will continue to do so in the future.*" (emphasis added).

11

*Headquarters are located*, against the Authority and the CM, or any of their consultants . . . with regard to any matter whatsoever arising out of or relating to the validity, construction, interpretation or reinforcement of the Contract.

McBride Aff. Ex. H (Gen. Conditions ¶ 19.5) (emphasis added).[4] Here, STH has filed this action in full compliance with the parties' forum selection clause because this Court is a Massachusetts court that is located in Suffolk County, which is where MWRA's headquarters is located.

Although MWRA concedes the jurisdiction of this Court, it nevertheless argues that appropriate venue lies with the state court. MWRA's argument, however, must be rejected because it attempts to inject an additional requirement that is not present in the forum selection clause agreed upon by the parties. To the extent the forum selection provision is ambiguous as to whether the parties have chosen state or federal courts in Massachusetts, such an ambiguity nevertheless must be construed against MWRA as the drafter of the Contract. Wright v. Commonwealth, 351 Mass. 666, 673 (1967); Bates v. John Hancock Mut. Life Ins. Co., 6 Mass. App. Ct. 823 (1978). In construing this ambiguity, the Court must, wherever possible, read the contract as a whole, giving harmonious meaning to every word and phrase and treating nothing as surplusage. See Northborough Youth Hockey Program, 2000 WL 1473504 at *9. Notably, as the author of an ambiguous term, MWRA must be held to any reasonable interpretation attributed to that term which is relied upon by STH. See Merrimack Valley Nat'l Bank, 372 Mass. at 691. Here, MWRA must be bound by STH's reasonable interpretation of the forum

---

[4] When considering aspects of a motion to dismiss based upon FED. R. CIV. P. 12(b)(1) or (3), the Court may review materials outside the pleadings to determine if jurisdiction and venue are existent and appropriate. See McClellan v. Woonsocket Inst. For Sav., 466 F.Supp. 943, 944 (D. Mass 1979); Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). Affidavits submitted are to be construed in the light most favorable to the plaintiff. See Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1347 (Fed. Cir. 2002) ("[W]hether the plaintiff has made a prima facie showing of personal jurisdiction over the defendant requires construing the pleadings and affidavits in the light most favorable to the plaintiff.").

selection clause to require only that which it states: a court located in Suffolk County, Massachusetts, which clearly this Court is.

Recognizing this weakness, MWRA unpersuasively attempts to fit this case within the framework of the decisions in R.W. Granger & Sons, Inc. v. Rojac Co., 885 F. Supp. 319 (D. Mass. 1995) and LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp., 739 F.2d 4 (1st Cir. 1984). In R.W. Granger, this Court addressed a situation in which the defendant moved to dismiss the suit by challenging the enforceability of a controlling forum selection clause in favor of the "courts of the Commonwealth Massachusetts" and contending that the suit "should be dismissed to permit the parties to proceed with two related actions in Connecticut and New York." R.W. Granger, 885 F. Supp. at 320-21. This Court rejected the defendant's argument after finding the forum selection clause to be "reasonable and enforceable" and permitting the action to proceed in the United States District Court for the District of Massachusetts in accordance with its interpretation of the forum selection clause. Id. at 322. Here, STH does not challenge the enforceability of the forum selection clause and has, in fact, brought suit in Massachusetts as required by the forum selection clause.

Rather than challenge the enforceability of the forum selection clause, STH disputes MWRA's application of that clause to prevent litigation in this Massachusetts federal court, which is located in Suffolk County. MWRA's reliance upon the decision in LFC Lessors is misplaced. Notably, in LFC Lessors, the Court stressed that a forum selection clause does not deprive the Court of its jurisdiction or venue; it instead simply acts as the parties' stipulated agreement to request certain courts to decline to exercise jurisdiction in favor of the forum selected by the parties. See LFC Lessors, 739 F.2d at 6 (quoting Central Contracting Co. v. Md. Cas. Co., 367 F.2d 341, 345 (3rd Cir. 1966)). In addition, the Court in LFC Lessors found the

13

forum selection provision to be "at least somewhat ambiguous" as the whether the phrase "'courts *of* Massachusetts' (emphasis added) could mean all the courts physically within the state or only those courts that trace their origin to the state, *i.e.*, the Massachusetts state courts." Id. at 7. Although the court noted its belief that the parties "more likely" intended the "latter meaning" and ultimately concluded that the subject provision "was intended to mean that all actions on this contract must be brought in the Massachusetts state courts," it nevertheless recognized the rule that "an ambiguous contract should be construed against the drafting party ... ." Id. As a result, because the plaintiff drafted the forum selection provision in LFC Lessors, the Court construed the provision against the plaintiff by holding that the action should be brought in state court. Id. at 8. Here, however, MWRA drafted the forum selection provision and, therefore, to the extent any ambiguity exists as to STH's right to bring this action in this Court, such ambiguity should be construed against MWRA to permit this action to proceed in federal court.

In addition, the forum selection clause in the Contract between STH and MWRA is distinguishable from the one in LFC Lessors, which provided:

> This Agreement shall be considered to be a MASSACHUSETTS contract and ... shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance *with the law, and in the courts, of the Commonwealth of Massachusetts.*

Id. at 6 (quoting Appellant's Brief at 51) (emphasis added). In making its determination that the parties agreed to litigate their disputes solely in Massachusetts state courts, the LFC Lessors court placed great emphasis on the parallel structure of the italicized portion quoted above, which the court concluded "must have been intended to restrict the meaning of both 'law' and 'courts' to those that trace their origin to the state." Id. at 7. In the instant case, however, the

14

forum selection clause is not tied to the "laws of the Commonwealth of Massachusetts,"[5] and, therefore, contrary to LFC Lessors, no discernible basis exists to believe that the parties intended the phrase "courts of the Commonwealth of Massachusetts" to refer exclusively to the sovereignty of Massachusetts instead of the geography of Massachusetts.

Finally, STH's understanding of the forum selection clause is virtually identical to MWRA's use of this same clause in a previous construction contract. In Kiewit Construction Company, et al. v. Massachusetts Water Resources Authority, Civil Action No. 93-10855Z (D. Mass.) (Zobel, J.), the contractor pled that "MWRA has consented to suit in any court of competent jurisdiction," a fact that MWRA admitted in its Answer to that lawsuit. In that same action, the contractor also alleged proper jurisdiction and venue. Although MWRA answered that those allegations set forth conclusions of law to which no response was required, MWRA did not assert a venue or jurisdictional affirmative defense in its Answer and raised no prior motion, therefore waiving such defenses under Federal Rule of Civil Procedure 12.

## CONCLUSION

MWRA's Motion must be denied because it is based upon erroneous facts and assumptions outside the Complaint, which may not be resolved in a motion to dismiss. Moreover, MWRA's Motion contradicts the clear record before this Court that STH has sufficiently pled a cause of action against MWRA for its breach of contract by MWRA's refusal to compensate STH for the additional labor costs to employ a second topside electrician, which

---

[5] In an attempt to make this connection, MWRA has contended that Massachusetts law governs the Contract and MWRA's enabling act favors state courts. Neither consideration, however, changes the analysis because Massachusetts law will continue to govern the Contract in federal court and the parties did not include MWRA's so-called preference for state courts in the forum selection clause at issue. MWRA's citation to M.G.L. c. 92 App., § 1-24 may indicate a preference for state court with respect to actions involving the enforcement of rights and duties under the MWRA Act or actions against MWRA where water pollution is at issue, but neither of those actions is at issue here and, therefore, the so-called preference for state courts is not only absent from the forum selection clause but is also inapplicable under the cited statute in any event.

MWRA caused by denying STH its rights under the Contract. STH has not waived its claim by not demanding arbitration because STH's right to demand arbitration never matured due to MWRA's unjustified refusal to allow STH to proceed to Step 2 of the PLA dispute resolution process. Finally, venue is appropriate pursuant to the parties' forum selection clause because this Court is a court of the Commonwealth of Massachusetts that is located in the county where MWRA's headquarters is located. For the foregoing reasons, MWRA's Motion must be denied.

Dated: November 12, 2004

Respectfully submitted,

**SHEA-TRAYLOR-HEALY,
A JOINT VENTURE**

By its attorneys,

Joel Lewin, Esq. (BBO #298040)
Jeremy Blackowicz, Esq. (BBO #650945)
**Hinckley, Allen & Snyder LLP**
28 State Street, 29th Floor
Boston, Massachusetts 02109-1775
Tel: (617) 345-9000

Of Counsel:

Henry D. Danforth, Esq.
Arnie B. Mason, Esq.
**Watt, Tieder, Hoffar
& Fitzgerald, L.L.P.**
8405 Greensboro Drive
Suite 100
McLean, Virginia 22102
(703) 749-1000

## CERTIFICATE OF SERVICE

I, Jeremy Blackowicz, hereby certify that on this 12th day of November, 2004, I served a copy of the forgoing Plaintiff's Opposition to Defendant's Motion to Dismiss Complaint, by mailing the same, postage prepaid, to:

    Steven A. Remsberg, Esq.
    Massachusetts Water Resources Authority
    100 First Avenue, Building 39
    Charlestown navy Yard
    Boston, MA 02129

_____
Jeremy Blackowicz