United States District Court
District of Massachusetts

|  |  |
|---|---|
| SHEA-TRAYLOR-HEALY, a Joint Venture </br></br> Plaintiff, </br></br> v. </br></br> MASSACHUSETTS WATER RESOURCES AUTHORITY, </br></br> Defendant. | Civil Action No. </br> 04-11969-NMG |

MEMORANDUM & ORDER

GORTON, J.

In the instant dispute, Shea-Traylor-Healy, a Joint Venture ("STH"), alleges that the Massachusetts Water Resources Authority ("MWRA") is in breach of the parties' agreements governing the construction of a water supply tunnel. MWRA now moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

I.  **Factual Background**

   A.  **The Contracts**

      1.  The Construction Contract

According to the complaint, the MWRA is a "body politic" organized pursuant to Massachusetts law. Sometime during the late 1980s or early 1990s (the parties do not specify when), MWRA and STH entered into an agreement whereby STH agreed to

-1-

construct a 12-mile-long water supply tunnel stretching from Southborough, Massachusetts to Weston, Massachusetts ("the Construction Contract"). MWRA also contracted with Stone & Webster, Inc. ("Stone & Webster") to be the construction manager of the project. STH alleges that, as a result of that relationship, Stone and Webster was authorized to "represent and act on behalf of MWRA".

The Construction Contract provides that STH is to be paid a fixed price but that the price can be modified through a "change order". In Clause 13.4.1, the parties agreed that:

> [i]f the Contractor wishes to make a claim for an increase in the Contract Sum by reason of any work performed or materials furnished by him or by reason of any event, circumstance or occurrence ... he shall give the CM [construction manager] and the Authority written notice thereof ....

The Construction Contract also contains a forum selection clause which states that:

> [t]he Contractor [agrees to] waive jurisdiction and venue and shall submit to the jurisdiction of the courts of the Commonwealth of Massachusetts regardless of residence or domicile, with respect to any actions or suits at law or in equity arising under or related to the bidding, award or performance of the Work.
>
> The Contractor . . . shall not commence any action, other than those in the Commonwealth of Massachusetts in the county where the Authority's Headquarters are located against the Authority . . . with regard to any matter whatsoever arising out of or relating to the validity, construction, interpretation or reinforcement of the Contract.

2.  The Project Labor Agreement

In addition to the Construction Contract, MWRA required STH and all subcontractors to sign the MetroWest Water Supply Project Labor Agreement ("the PLA"). MWRA was not a signatory of the agreement but STH alleges that MWRA was bound under it because Stone & Webster, the agent of MWRA, had signed. The PLA set forth a three-step mandatory dispute resolution process for project disputes. First, the complainant was to provide notice of the alleged PLA violation to the other parties and to confer with them. Second, a meeting was to be held among the "involved Local Union", the "involved Contractor" and Stone & Webster. Third, if the meeting failed to resolve the dispute, the complainant could initiate binding arbitration.

Because labor unions were to be involved with the project, the PLA incorporated the Electricians' Union Agreement ("the Union Agreement") for the International Brotherhood of Electrical Workers Local 103 ("Local 103"). Under the Union Agreement, during construction, contractors were required to provide "a Journeyman Wireman top side at all times".

**B.   The Project**

The water supply tunnel has seven "shafts" which can be used for access. At issue in this case are "Shaft L" and "Shaft N". Shaft L is centrally located and, for that reason, STH initially chose it as the primary access point for workers.

-3-

At some point during the construction, STH and KC Electric Company ("KC"), a subcontractor hired by STH, began to use Shaft N as an additional access point. They did not, however, provide an additional top side electrician on that site. In 2001, Local 103 demanded that one be employed because the shafts were located several miles apart. STH objected and argued that the topside electrician at Shaft L was sufficient.

STH and KC initiated step one of the PLA dispute resolution process. Local 103 persisted in its contention that an additional topside electrician was required. On September 25, 2001, STH allegedly attempted to initiate step two of the dispute resolution procedure by requesting a meeting among the appropriate parties. At the same time, STH placed a topside electrician at Shaft N so that construction could continue.

On November 9, 2001, STH alleges that "MWRA acting through Stone & Webster denied the request to proceed to Step 2". That refusal forms the basis of STH's first claim for breach of contract.

On November 13, 2001, STH sent MWRA a letter stating its intention to make a request for "an Equitable Adjustment in the Contract Sum in anticipation of a change order for the additional, unanticipated costs incurred for providing an additional topside electrician at Shaft N". On April 29, 2002, Stone & Webster, allegedly acting on behalf of MWRA, responded

that a change order would not be approved.

Nonetheless, on July 15, 2002, STH submitted the request and specified that it had incurred $356,080 in costs resulting from the additional electrician. On February 21, 2003, MWRA's Engineer, who was responsible for reviewing such requests, denied it. That denial forms the basis of STH's second claim for breach of contract.

On September 10, 2004, STH filed a compliant alleging breach of contract. On October 29, 2004, MWRA filed a Motion to Dismiss, arguing that dismissal is warranted because: 1) the necessity for a second topside electrician was not facilitated by a "change in the scope of [STH's] work" but rather by STH's "unilateral" choice to use Shaft N, 2) STH waived its claim by failing to complete the PLA dispute resolution procedure and 3) the forum selection clause should be enforced in MWRA's favor.

## II. Legal Analysis

MWRA captioned its filing as a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). At the same time, however, it filed an affidavit of Michael J. McBride and requested that, "in the alternative", its motion be treated as a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56.

Pursuant to Fed.R.Civ.P. 12(c), a court may treat a Motion to Dismiss which is accompanied by evidence outside the pleadings

as a Motion for Summary Judgment. The Court declines to do so here because the parties have not presented sufficient factual background or evidence for consideration of a motion for summary judgment (neither party devotes more than a page to reciting the facts) and such a motion would, in any event, be denied based upon defendant's non-compliance with Local Rule 56.1 (requiring that a motion for summary judgment be accompanied by a statement of undisputed facts). Accordingly, the Court will not consider the McBride Affidavit and will conduct an analysis under Fed.R.Civ.P. 12(b)(6).

**A.  Legal Standard**

A court may not dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." Judge v. City of Lowell, 160 F.3d 67, 72 (1st Cir. 1998)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all

reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollett, 83 F. Supp.2d at 208.

### B. Analysis

#### 1. Breach of the Construction Contract

Defendant first argues that plaintiff has not stated a claim for breach of the Construction Contract because "the increased costs of manning Shaft N with a dedicated Wireman resulted solely and exclusively from STH's own decision . . . to use Shaft N". In essence, MWRA contends that "unilateral" action by STH cannot form the basis of a change order request and, therefore, the denial of that request cannot constitute a breach of contract.

Defendant's argument is unpersuasive because the Contract contains no such limitation on change order requests. Clause 13.4.1 states that a change order request is appropriate:

> [i]f the Contractor wishes to make a claim for an increase in the Contract Sum by reason of any work performed or materials furnished by him or by reason of any event, circumstance or occurrence . . . .

The allegations of the complaint satisfy those criteria in several ways. There was additional "work performed" because there was an additional topside electrician performing it. There was also an "event, circumstance or occurrence" that facilitated the change order request: the unexpected need for a second

-7-

topside electrician.

The Construction Contract does not require that a change order result from action by MWRA, nor does it exclude the possibility of change orders arising from unilateral actions by STH. MWRA's argument is largely devoted to demonstrating that the denial of the change order request was justified on the merits, but that argument is not a proper subject for consideration on a motion to dismiss. STH has pled that it was entitled to file a change order request and that the request was wrongfully denied. Accordingly, STH has stated a claim for breach of the Construction Contract.

    2.   <u>Breach of the PLA</u>

Defendant also moves to dismiss the complaint insofar as a breach of the PLA is alleged. Defendant argues a) that it cannot have breached the PLA because it was not a party to that agreement and b) that plaintiff waived any claim it might have otherwise had by failing to follow through with the dispute resolution procedure outlined in the PLA.

Those arguments are unavailing because they contradict the allegations of the complaint. See Nollet, 83 F.Supp.2d at 208 (stating that allegations of the complaint are taken as true on a motion to dismiss). Plaintiff alleges that MWRA was a party to the PLA because its agent, Stone & Webster, entered into that agreement and acted under it "on behalf of MWRA". It appears

-8-

that MWRA required STH to sign the PLA and that MWRA exercised control over Stone & Webster's alleged decision not to proceed through the dispute resolution procedure. If proven, those allegations could establish that MWRA was bound under the PLA.

STH has also sufficiently alleged that it did not waive its claim by failing to complete the dispute resolution procedure. STH alleges that the reason it failed to complete the procedure was because Stone & Webster, as agent to MWRA, refused to engage in a step two meeting. Assuming that is true, then it is MWRA, not STH, that waived the dispute resolution procedure because it is the party that prevented the procedure from being completed. See Boyder v. Hill, 85 N.E. 413, 415 (Mass. 1908)(stating elements of a waiver). If the procedure was waived by MWRA, so too was plaintiff's impediment to filing suit. Accordingly, STH has stated a claim for breach of the PLA.

   3.   The Forum Selection Clause

Finally, defendant argues that this Court should enforce the parties' forum selection clause and decline to assume jurisdiction of this case. Plaintiff does not object to the enforcement of the clause but disagrees with MWRA as to its proper interpretation.

The disagreement is centered upon whether the clause is intended to require suit to be commenced in Massachusetts state court. The second paragraph of the clause (reproduced above)

states, in part, that "[t]he Contractor . . . shall not commence any action, other than those in the Commonwealth of Massachusetts in the county where the Authority's Headquarters are located". Defendant contends that the phrase is intended to refer to state court only. To the contrary, Plaintiff contends that the phrase refers to a geographic limitation and that the instant action is in compliance with its terms.

The phrase is reasonably susceptible to either interpretation. On the one hand, the fact that the parties chose the term "*in* the Commonwealth of Massachusetts" rather than "*of* the Commonwealth of Massachusetts", and made the opposite choice in the paragraph before when referring to state courts, suggests that the phrase intends a geographic limitation. Moreover, given that the same body of law (Massachusetts law) would be applicable regardless of the choice of forum, it would be reasonable to conclude that the clause was drafted with convenience, rather than a particular court, in mind.

Finally, regardless of the intended meaning, plaintiff has literally complied with the parties' agreement. The headquarters of the MWRA is located in Suffolk County and so is this Court. Thus, suit has been commenced "in the Commonwealth of Massachusetts in the county where the Authority's Headquarters are located". It is difficult to conclude that plaintiff's interpretation is unreasonable, given that it matches the

language of the agreement flawlessly.

On the other hand, there is support for the conclusion that the parties intended to specify state court as their chosen forum. The clause specifies that suit must be commenced "in the county where the Authority's Headquarters are located". The Superior Court Department of the Trial Court of Massachusetts is divided by county but federal courts in Massachusetts are not. But for the apparent coincidence that MWRA's headquarters at the time of filing was located within the same county as the Eastern Division of the United States District Court for the District of Massachusetts (in which this case was brought), the clause would have excluded them.

Furthermore, the first paragraph provides indirect support for MWRA's contention. In that paragraph, the parties agreed that they "will waive jurisdiction and venue and shall submit to the jurisdiction of the courts of the Commonwealth of Massachusetts". Given the use of term "courts of the Commonwealth", that paragraph refers to state courts. It is unlikely that the parties would have waived jurisdictional objections with respect only to state court if they intended, in the next paragraph, to permit suit in either state or federal court.

Given the arguments on either side, the most reasonable conclusion is that the forum selection clause is ambiguous.

Fortunately, the First Circuit Court of Appeals has offered guidance as to the proper decision in just such a scenario. Speaking hypothetically with respect to a forum selection clause similar to the one at issue, the Court stated that:

> if [the court] were to [conclude] that the phrase is completely ambiguous, so that neither possible meaning was more likely to have been intended than the other, a fundamental principle would control: an ambiguous contract should be construed against the drafting party.

LFC Lessors, 739 F.2d at 7-8.

In this case, STH points out that MWRA drafted the agreement and MWRA does not contend otherwise. Given two reasonable interpretations of an ambiguous term, canons of contract interpretation favor the non-drafting party's resolution of the issue. Accordingly, the forum selection clause does not compel dismissal of this action.

### ORDER

In accordance with the foregoing, defendant's Motion to Dismiss (Docket No. 8) is **DENIED**.

**So ordered.**

_____
Nathaniel M. Gorton
United States District Judge

Dated July 12, 2005

-12-